**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DELTA SALOON, INC.,<br>a Nevada Corporation, | Case No.: 3:19-cv-00748-CSD |
| Plaintiff | **Order** |
| v. | Re: ECF No. 131 |
| AMERIGAS PROPANE, L.P., a<br>Pennsylvania Limited Partnership, et al., | |
| Defendants | |

Before the court is defendant AmeriGas Propane, L.P.'s motion for partial summary judgment. (ECF Nos. 131, 131-1 to 131-13.) Plaintiff Delta Saloon, Inc. filed a response. (ECF No. 135.) AmeriGas filed a reply. (ECF No. 136.)

For the reasons set forth below, the motion is granted in part and denied in part.

**I. BACKGROUND**

Dr. Vincent Malfitano is the sole owner and officer of Delta Saloon, Inc., which owns the Delta Saloon in Virginia City, Nevada. (Dr. Malfitano Depo. Tr., ECF No. 131 at 7, depo. p. 17:4-24.) In 2017, Dr. Malfitano self-installed a gas line between the first and second floors of the Delta Saloon to connect it to a gas-fired pizza oven in the first-floor kitchen. Dr. Malfitano admits that he did not secure the required permit from Storey County to install the gas line, and he did not utilize a licensed contractor for the installation, in violation of Storey County Ordinances. (Dr. Malfitano Depo., ECF No. 131-1 at pp. 60:19-24, 64:12-23, 96:2-4, 96:20-25, 102:10-24, 103-104; Bastian[1] Depo., ECF No. 131-4 at p. 75; ECF No. 131-6, Storey County

---

[1] Joshua Bastian is one of Delta Saloon's experts.

Ordinance 15.12.010 (requiring a permit if an owner or authorized agent intends to install a gas system); ECF No. 131-9, Storey County Ordinance 15.12.020 (application for permit must identify the name of the licensed contractor performing the work as well as the scope of work); ECF No. 131-12, Storey County Ordinance 15.04.010 (adopting, among other things, the National Fire Protection Association standards (NFPA)).) Ultimately, Dr. Malfitano did not connect the gas line to the pizza oven (or any other appliance), and the gas line was left uncapped in violation of NFPA 54, Section 7.7.2.1. (Bastian Depo., ECF No. 131-4 at p. 75:7-25, 76:1-3; ECF Nos. 131-12, 131-13 (NFPA 54, Section 7.7.2.1 (capping requirement).) Dr. Malfitano had installed a shut-off valve which prevented gas from escaping through the uncapped line when the valve was closed.

The Delta Saloon was insured for property damage under a policy with Scottsdale Insurance Company. (Dr. Malfitano Depo., ECF No. 131-1 at pp. 176:5-11, 178:5-8; ECF No. 131-2.)

On March 12, 2019, there was an explosion at the Delta Saloon. The explosion occurred at approximately 9:00 a.m., when Delta Saloon employee David Harrison turned off a light switch in the first-floor kitchen. (Harrison Depo., ECF No. 131-7 at pp. 83-85; Storey County Incident Report, ECF No. 131-3.) Experts, including Delta Saloon's, determined this was a propane fueled explosion, and the source of the gas was the open gas line between the first and second floor kitchens. (Bastian Depo., ECF No. 131-4 at pp. 97:5-24, 112:8-24.) The shut-off valve was apparently opened at some point prior to the explosion. (*See* AmeriGas' motion, ECF No. 131 at 6:16-17, 10:3-4; Bastian Depo., ECF No. 131-4 at p. 112:21-25.) The explosion caused significant property damage.

An insurance claim was made to Scottsdale, and Scottsdale paid out $2.2 million—

the full policy limits. (Malfitano Depo., ECF No. 131-1 at p. 187:17-20; ECF No. 131-5.)

Delta Saloon filed this action in state court, and it was removed to federal court by AmeriGas. Delta Saloon claims the explosion was caused by AmeriGas' negligence in refilling the propane tank the day before, causing a leak that resulted in the explosion. (Am. Compl., ECF No. 17.) AmeriGas asserts an affirmative defense of comparative negligence, and it maintains that Dr. Malfitano's unpermitted and unlicensed installation of the gas line created the hazardous condition that caused the explosion. (AmeriGas' motion, ECF No. 131 at 6:23-25.)

Scottsdale filed a complaint in intervention against AmeriGas as subrogee under the insurance policy to recover money paid to its insured from AmeriGas. (ECF Nos. 21, 27, 28.)

Scottsdale and AmeriGas reached a settlement for an undisclosed amount as to Scottsdale's subrogation claim, and on January 20, 2022, the complaint in intervention was dismissed with prejudice pursuant to a stipulation between Scottsdale and AmeriGas. (ECF Nos. 47, 48.)

The damages Delta Saloon seeks to recover in this action include the $2.2 million paid by Scottsdale. (Dr. Malfitano Depo., ECF No. 131-1 at p. 335:13-19.)

AmeriGas moves for partial summary judgment. First, AmeriGas argues that the court may determine, as a matter of law, that Dr. Malfitano's conduct in installing the gas line without the required permit and without using a licensed contractor, is negligence *per se*. AmeriGas requests that if the jury also finds AmeriGas to be negligent, that the court issue a modified comparative negligence jury instruction pursuant to Nevada Revised Statute (NRS) 41.141 for apportionment of negligence between the parties. Second, AmeriGas contends the court should find, as a matter of law, that Delta Saloon is not entitled to seek the $2.2 million in damages that it already received as insurance payments from Scottsdale.

## II. LEGAL STANDARD

A party may move for summary judgment as to a claim or defense, or for partial summary judgment as to a part of a claim or defense. Fed. R. Civ. P. 56(a).

A party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of

establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted).

### III. DISCUSSION

**A. Affirmative Defense of Comparative Negligence *Per Se***

**1. Comparative Negligence**

Nevada is a modified comparative negligence state: the comparative negligence of the plaintiff will not bar the plaintiff's recovery if the plaintiff's negligence was not greater than the negligence of the defendant. NRS 41.141(1). If a jury decides the plaintiff is entitled to recover damages (*i.e.*, the plaintiff's negligence was not greater than the defendant's), then the jury shall return a general verdict form with the total amount of damages regardless of the plaintiff's comparative negligence and a special verdict form that sets forth the percentage of negligence attributable to each side. NRS 41.141(2)(b)(1)-(2).[2]

---

[2] Nevada's modified comparative negligence scheme, set forth in NRS 41.141, supplanted the common law tort doctrine of contributory negligence, which resulted in a complete bar to recovery if the plaintiff's negligence contributed to his injuries. *See Café Moda v. Palma*, 128 Nev. 78, 82, 272 P.3d 137, 140 (2012).

"Comparative negligence 'is conduct on the part of the plaintiff [that] falls below the standard to which [they] should conform for [their] own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm.'" *Cox v. Copperfield*, 138 Nev. Adv. Op. 27, 507 P.3d 1216, 1228 (2022) (quoting Restatement (Second) of Torts § 463 (Am Law. Ins. 1965)).

### 2. Negligence *Per Se*

Under the doctrine of negligence *per se*, the duty and breach elements of a negligence claim are established when a statute or ordinance is violated and "the injured party is in the class of persons whom the statute is intended to protect and the injury is of the type against which the statute is intended to protect." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 828, 221 P.3d 1276, 1283 (2009) (citing *Ashwood v. Clark County*, 113 Nev. 80, 86, 930 P.2d 740, 744 (1997); *Sagebrush Ltd. v. Carson City*, 99 Nev. 204, 208, 660 P.2d 1013, 1015 (1983)).

In *Vega v. Eastern Courtyard Associates*, 117 Nev. 436, 441, 24 P.3d 219, 222 (2001), the Nevada Supreme Court specifically held the violation of a building code provision can serve as the basis of a negligence *per se* claim if all of the required elements are met.

Whether the injured party is a member of the class of persons the statute or ordinance is designed to protect and whether the injury is the type the statute or ordinance is intended to protect are legal questions to be determined by the court. *Id.* (citations omitted).

In addition to these elements, the moving party must also demonstrate the statute or ordinance was violated, and the violation was the proximate or legal cause of the injury. *See Vega,* 117 Nev. at 441, 24 P.3d at 222; *Prescott v. Slide Fire Sols.*, 410 F.Supp.3d 1123, 1133 (D. Nev. 2019) (citing *Anderson v. Baltrusaitis*, 113 Nev. 963, 944 P.2d 797, 799 (1997)); *see also Paso Builders, Inc. v. Hebard*, 83 Nev. 165, 172,  426 P.2d 731, 736 (1967) (negligence *per*

*se* does not dispense with the requirement to prove causation). Then, the burden shifts to the non-moving party "to show excuse or justification" for violating the statute or ordinance. *Barnes v. Delta Lines, Inc.*, 99 Nev. 688, 691, 669 P.2d 709, 711 (1983) (citation omitted).

### 3. Application of Negligence *Per Se*

Delta Saloon argues that negligence *per se* doctrine does not apply because AmeriGas seeks to hold Delta Saloon liable for Delta Saloon's negligence and *AmeriGas'* injuries resulting from that negligence, and as such, the traditional roles of the plaintiff and defendant for purposes of the doctrine of negligence *per se* are reversed. (ECF No. 134 at 7.) Under this rationale, Delta Saloon contends that the court should look at whether the Storey County ordinances were enacted to protect *AmeriGas* because *AmeriGas* is the injured party in connection with its comparative negligence claim.

Delta Saloon is mistaken. AmeriGas does not seek to hold Delta Saloon liable for *AmeriGas'* injuries resulting from Delta Saloon's negligence. Instead, AmeriGas is asserting an affirmative defense of comparative negligence. (ECF No. 135 at 6:26-27.) Comparative negligence looks at the negligence of the *plaintiff* in order to apportion fault and damages for the *plaintiff's* alleged injuries. *Cox,* 507 P.3d at 1228; NRS 41.141. The *defendant* (AmeriGas) is not the injured party for purposes of AmeriGas' comparative negligence claim. When a defendant asserts an affirmative defense of comparative negligence, the *plaintiff* remains the injured party. The defendant is simply arguing that the plaintiff should not recover, or the plaintiff's recovery should be reduced, as a result of the *plaintiff's* own negligence that contributed to the *plaintiff's* injuries.

To support its position, Delta Saloon relies on *Anderson v. Baltrusaitis*, 113 Nev. 963, 944 P.2d 797 (1997). In that case, the plaintiff was struck and injured by the defendant's vehicle as the

plaintiff crossed a street at an intersection where the evidence indicated the plaintiff was approximately five to ten feet outside of the unmarked crosswalk area when the accident took place. The plaintiff sued defendant for negligence. The defendant moved for summary judgment, arguing that judgment as a matter of law was appropriate under NRS 484.327, which requires that pedestrians yield to vehicles when they are outside a marked or unmarked crosswalk area. The district court granted the motion for summary judgment, finding the plaintiff failed to yield to defendant when plaintiff was outside of an unmarked crosswalk area, and the plaintiff was more negligent than the defendant. *Anderson*, 113 Nev. at 964, 944 P.2d at 798. The plaintiff appealed and argued the district court erred when it determined there was no genuine dispute of material fact and that defendant was entitled to judgment as a matter of law. *Id.*, 113 Nev. at 965, 944 P.2d at 799.

The Nevada Supreme Court noted that it was the *defendant* who argued to the trial court that *he* fell within the class of persons the statute (NRS 484.327) was designed to protect, and therefore, the plaintiff's failure to yield to him constituted negligence *per se*. The Nevada Supreme Court recounted its prior holding in *Ashwood v. Clark County*, 113 Nev. 80, 86, 930 P.2d 740, 744 (1997), that the duty and breach elements of negligence are established where the "injured party belongs to the *class* of persons that the statute was intended to protect, and the injury is of the *type* against which the statute was intended to protect." *Anderson*, 113 Nev. at 965, 944 P.2d at 799 (citation omitted, underline added, italics original). The Nevada Supreme Court said the statute in question "was enacted to increase the safety of pedestrians crossing in unmarked crosswalks, not to protect motorists from careless pedestrians." *Id*. As such, the Nevada Supreme Court concluded the defendant was not a member of the class that the statute was designed to protect. The Nevada Supreme Court also discussed that "liability under a negligence

8

*per se* theory … is in general a question of fact for a jury." *Anderson*, 113 Nev. at 965-66, 944 P.2d at 799 (citation and quotation marks omitted). The Court mentioned that the defendant also may have had a duty to reduce his speed under circumstances where the defendant may have had a reason to anticipate that a pedestrian might be crossing the street. The Court concluded there were genuine disputes as to material facts regarding the defendant's duty and the plaintiff's comparative negligence. *Anderson*, 113 Nev. at 967, 944 P.2d at 800.

In *Anderson*, it was the *defendant* who argued at the lower court that *he* was a member of the class the statute was intended to protect. *Anderson* does not contain a blanket holding that a defendant asserting the affirmative defense of comparative negligence based on the *per se* negligence of the plaintiff must always be a member of the class of persons the statute was designed to protect. In fact, it contains no substantive discussion of this issue at all, and the Court's focus was centered on the disputed factual issues rather than the elements of negligence *per se*.

Negligence *per se* cases in Nevada (and elsewhere) focus on the *injured party*, and comparative negligence cases focus on the *plaintiff's* own negligence and how it contributes to the *plaintiff's* injury. *See Sanchez*, 125 Nev. at 828, 221 P.3d at 1283 (duty and breach elements of negligence are satisfied "when the *injured party* is in the class of persons whom the statute is intended to protect); *Atkinson v. MGM Grand Hotel, Inc.*, 120 Nev. 639, 98 P.3d 678 (2004) (negligence *per se* analysis focuses on the injured party); *Vega*, 117 Nev. 436, 441 P.3d at 222 (negligence *per se* is applied when the "*injured party* fits within the class of persons that a particular provision of a building code was intended to protect"); *Mid Continent Casualty Co. v. Engelke,* 337 F.Supp.3d 933 (D. Mont. 2018), *aff'd by* 842 Fed.Appx. 25 (9th Cir. 2020) (where defendant asserted comparative negligence defense based on negligence *per se* of the plaintiff, the court looked at whether the plaintiff (the injured party) was a member of the class the statute

at issue was intended to protect and at the injuries suffered by the plaintiff); *Paez v. Burlington Northern Santa Fe Ry.*, 362 P.3d 116 (N.M. Ct. App. 2015) (finding plaintiff driver (the injured party) was negligent *per se* as she was within the class of persons the statute sought to protect, and the collision was the type of harm the statute sought to prevent, noting that the focus is on the injured person); *Green v. U.S.*, 991 F.Supp. 15 (D.D.C. 1998) (finding plaintiff pedestrian could not recover under contributory negligence rule because plaintiff was negligent *per se* as a result of his violation of municipal regulation, which was designed to ensure the safety of pedestrians); *Mark v. Pacific Gas & Electric Co.*, 7 Cal. 3d 170, 496 P.2d 1276 (1972) (confirming that a violation of a public ordinance by a plaintiff may constitute contributory negligence *per se*  and focusing on the plaintiff's injuries and ultimately deciding the *plaintiff* was not a member of the class of persons the ordinance was intended to protect); Dobbs, et al., *The Law of Torts* §§ 148, 219 (2d ed.) (violation of a statute is negligence *per se* when the harm occurs "to a person within the class of persons the statute was intended to protect" and "[v]iolation of statute by a plaintiff equally proves the plaintiff's contributory negligence or comparative fault in appropriate cases"); Restatement (Third) of Torts: Apportionment of Liability § 14 (Am. L. Inst. 2000) (negligence *per se* occurs when the "actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and *if the accident victim* is within the class of persons the statute is designed to protect").

In sum, the court concludes the doctrine of negligence *per se* can be applied in the manner AmeriGas suggests. The court will now address the elements of this affirmative defense.

**4. Duty and Breach Elements**

There is no dispute that Storey County Ordinance 15.12.010 requires an owner or authorized agent to apply for and obtain a permit to install, enlarge, alter, repair, remove, convert

or replace a gas system. (ECF No. 131-6 at 2.) Nor is it disputed that Storey County Ordinance 15.12.020 requires an application for a building permit to identify the licensed contractor or subcontractor performing such work. (ECF No. 131-9.)

Dr. Malfitano, as an agent of Delta Saloon, violated the applicable building code provisions when he self-installed the gas line in the Delta Saloon without a permit and without using a licensed contractor. (*See* ECF No. 135 at 6:19-20: "Defendant then correctly notes that the gas line in question was installed without permits and not by a licensed contractor.")

The court must determine whether Delta Saloon is a member of the class of persons these building code provisions are intended to protect. AmeriGas presented testimony that the reason a licensed contractor is required to install a gas line is to follow the codes (such as capping a gas line that is not connected to an appliance) so as to not create a hazardous condition, and to protect the public in the case of a commercial building, such as this. (Pete Renaud Depo., ECF No. 131-10 at 11, depo. p. 24:4-25, 25:1-6.)

Delta Saloon fails to argue that *it* does not belong to the class of persons the building codes are intended to protect. In fact, Delta Saloon specifically acknowledges that *it* fits within the class of persons these code provisions are intended to protect—commercial property owners, patrons, and the general public. (ECF No. 135 at 7:8-11.)

The court agrees that it is readily apparent that one of the primary purposes of requiring a licensed contractor and a permit for the installation of a gas line is to protect public health and safety, and therefore, Delta Saloon is a member of the class of persons these building code provisions were designed to protect.

Now, the court must address whether the injury suffered by Delta Saloon—significant property damage as a result of the explosion—is a type of injury the building code provisions were

intended to prevent. AmeriGas presents evidence that these building codes were intended to ensure the safety of buildings and to protect from injuries such occurred here. This evidence has not been disputed by Delta Saloon. Therefore, the injury that occurred is the type these building code provisions were intended to prevent.

AmeriGas has established the duty and breach elements of its comparative negligence *per se* affirmative defense, and it is entitled to summary judgment in its favor as to these elements.

**5. Causation**

Finally, the court must address whether the violation of these building code provisions was the proximate or legal cause of the explosion.

AmeriGas asserts that Delta Saloon's own expert, Mr. Bastian, determined the origin of the gas that caused the explosion was the uncapped gas line that Dr. Malfitano installed. (Bastian Depo., ECF No. 131-4 at p. 97:5-24.) AmeriGas also argues that the uncapped gas line would have been discovered during a routine inspection triggered by a permit application under the Storey County Ordinance. Furthermore, AmeriGas contends that Dr. Malfitano failed to conduct any required testing after he installed the gas line. Therefore, AmeriGas maintains that the uncapped gas line installed by Dr. Malfitano, as an agent of Delta Saloon, was the proximate cause of the explosion.

Delta Saloon argues that causation and damages are issues reserved for the jury.

Nevada defines proximate or legal cause as "any cause which in natural [foreseeable] and continuous sequence unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred." *Clark County School Dist. v. Payo,* 133 Nev. 626, 636, 403 P.3d 1270, 1279 (2017) (quotation marks and citation omitted).

Courts in Nevada are generally reluctant to grant summary judgment in negligence cases. *See Anderson*, 113 Nev. at 965, 966-67, 944 P.2d at 799 (citations omitted). Usually, whether a party was "negligent in a particular situation is a question of fact for the jury to resolve." *Id*. (citation and quotation marks omitted). In particular, questions of whether the violation of a statute or ordinance was a "proximate cause of the plaintiff's injuries [is a] question[ ] of fact for the jury[.]" *Barnes*, 99 Nev. at 690, 669 P.2d at 711 (citation omitted). "It is only when different minds can reasonably arrive at but one result that a fact issue becomes a question of law, justifying a district court in taking the issue from the jury." *Anderson,* 113 Nev. at 966-67, 944 P.2d at 800 (citation and quotation marks omitted). "[L]itigants are not to be deprived of a trial on the merits if there is the *slightest doubt* as to the operative facts." *Id*. (citation and quotation marks omitted, emphasis added).

The court finds that AmeriGas has not demonstrated reasonable minds could only arrive at one conclusion, and the issue of whether Delta Saloon's negligence in installing the gas line without a permit and without a licensed contractor was the proximate cause of the explosion is reserved for the jury.

First, AmeriGas' own brief reveals a factual scenario which reasonable minds could find impacts Delta Saloon's own negligence. AmeriGas acknowledges that Delta Saloon installed a shut-off valve which prevented gas from escaping through the uncapped line when the valve was closed. AmeriGas claims that on March 11 and 12, 2019, gas escaped through the uncapped gas line installed by Dr. Malfitano "after the valve was inadvertently opened," ultimately causing the explosion. (ECF No. 131 at 6:14-18.) Neither side identifies *who* inadvertently opened the valve, but AmeriGas provides the testimony of Delta Saloon's expert, Mr. Bastian, who testified that "[t]he shut-off valve … was opened between the leak check performed by Mr. Kneefel and the

time of the explosion." (ECF No. 131-4, p. 112:21-25.) Had the shut-off valve not been opened, the explosion may not have occurred.

Second, in the context of a comparative negligence defense based on negligence *per se*, the court is tasked with determining not just whether Delta Saloon caused or contributed to the explosion, but whether Delta Saloon's *violation of the Storey County ordinances* (installation of the gas line without a permit and without a licensed contractor) was the proximate cause of the explosion. AmeriGas asks the court to make this determination *as a matter of law,* which requires a finding that reasonable minds could not arrive at any other result. It is undisputed that Delta Saloon violated those two ordinances, but too many assumptions need to be made to conclude that the violation of these ordinances was the proximate cause of the explosion as a matter of law.

As noted above, Dr. Malfitano could have installed the gas line with the shut-off valve and left the line uncapped, without a permit or licensed contractor, and it is possible no explosion would have occurred if the shut-off valve remained closed.

Even if Delta Saloon had hired a contractor, one must assume that the contractor or Delta Saloon obtained the required permit, and was qualified to install a gas line. Even if a contractor was used, it must be assumed that the contractor would complete the work in accordance with the applicable ordinances. While this may be the expectation, judges and litigators know all too well that this is not a certainty. The deposition testimony of Mr. Renaud[3] acknowledges that the requirement that the gas line be installed by a licensed contractor "helps" to ensure compliance with the applicable codes, but it is no guarantee. (ECF No. 131-10 at 17:5-6.) The contractor may have installed the gas line correctly, and capped it when it was not connected to appliance, or it is

---

[3] Pete Renaud is the Director of Community Development for Storey County, and former Senior Inspector for Storey County. (ECF No. 131 at 13:12-13.)

also possible that the contractor could have left the line uncapped with the assumption that it would be connected to the appliance, but then a decision was made by Delta Saloon not to have the appliance installed, and it could have remained uncapped. Next, one must further assume that the required inspection takes place. Finally, one must assume that the inspection would uncover the uncapped gas line, which is not a given since it is undisputed that the uncapped line "was left hidden in the ceiling" between the first floor and second floor kitchens. (ECF No. 131 at 10:2-3.)

All that is to say that what would have happened had Delta Saloon used a licensed contractor and obtained a permit is largely a matter of speculation or inference. As such, whether the violation of these building code provisions proximately caused the explosion is a question for the jury and not for the court.

### 6. Conclusion as to Negligence *Per Se*

AmeriGas' motion for partial summary judgment is granted in part and denied in part with respect to their affirmative defense of comparative negligence *per se*. The motion is granted with respect to the duty and breach elements of the affirmative defense of comparative negligence *per se*. The motion is denied as to the causation element of this affirmative defense. It will be up to the jury to determine whether the violation of the Storey County ordinances was a proximate cause of the explosion. Alternatively, AmeriGas may also present evidence that Delta Saloon was comparatively negligent under a theory of ordinary negligence. In either event, if the jury determines that Delta Saloon was comparatively negligent, it must apportion that negligence under NRS 41.141.

### B. Delta Saloon's Damages and the $2.2 Million Paid by Scottsdale

AmeriGas seeks an order from the court finding, as a matter of law, that Delta Saloon is not entitled to seek as damages in this action the $2.2 million it was already paid by Scottsdale.

15

There is no dispute that Delta Saloon was paid $2.2 million—the policy limits—pursuant to an insurance policy with Scottsdale. There is likewise no dispute that insurance policy contains a subrogation provision, and that Scottsdale intervened in this matter to pursue its subrogation claim against AmeriGas. Scottsdale and AmeriGas reached a settlement as to the subrogation claim for an amount that has not been disclosed to the court, and the subrogation claim has been dismissed with prejudice from this action.

Delta Saloon has nevertheless indicated that it intends to seek the $2.2 million that it was already paid as an element of its damages in this case.

**1. Impact of Subrogation**

Subrogation, in the insurance context, is the "insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss that the insurer has both insured and paid." J. Plitt, et al., 16 *Couch on Insurance* § 222:1 (3d ed. 2000).

Subrogation can be equitable or contractual. Here, we are dealing with contractual subrogation. Under the principle of subrogation, "an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party." *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368, 252 P.3d 206, 208 (2011).

"[T]he concept of subrogation merely gives the insurer the right to prosecute the cause of action that the insured possessed against anyone legally responsible for the insured's harm[.]" J. Plitt, *supra,* § 222:14. "The right of subrogation does not prevent the insured from commencing an action for damages not covered by the insurance." *Id*.; *Paulson v. Allstate Ins. Co.*, 263 Wis.2d 520, 536, 655 N.W.2d 744, 752 (2003) ("an insured's right to recover amounts beyond those paid by the insurer is not extinguished by subrogation"). The insurer may intervene in an

16

action initiated by its insured, or it may bring its own action against the tortfeasor to recover the amount of its payment. *Id*. Here, Scottsdale elected to intervene in the action initiated by Delta Saloon against AmeriGas.

"When the insured is only partially compensated by the insurer for a loss … the subrogation doctrine results in two or more parties having a right of action for recovery of damages based upon the underlying negligence." *Garbell v. Conejo Hardwoods, Inc.*, 122 Cal. Rptr. 856, 863 (Cal. Ct. App. 2011) (citations omitted). The insurer has a subrogation right to recover what it paid its insured, and the plaintiff insured has a right to recover for the "uninsured loss." *Id*. Here, for example, Scottsdale has a subrogation right to recover the $2.2 million it paid Delta Saloon under the insurance policy, and Delta Saloon has a right to recover its damages above the amount it was paid pursuant to the policy.

"[T]he insured is no longer entitled to recover the entire loss the insured has suffered, when part of the loss has been compensated by the insurer, and when a claim is partially subrogated, the subrogee must authorize the subrogor to judicially enforce the subrogated claim." J. Plitt, *supra*, § 222:14. Courts have held that the settlement of the insurer's subrogation claim with the tortfeasor extinguishes the plaintiff's right to seek the amount of the insurance payment from the tortfeasor. *See Pacific Sheet Metal, Inc. v. Ford Motor Co.*, No. C10-373 MJP, 2012 WL 12845610, at *1 (W.D. Wash. Apr. 30, 2012) (citations omitted) ("Once the subrogated insurer has resolved the claim, either through litigation or settlement, the insured is no longer entitled to recover the reimbursed portion of the loss from the tortfeasor."); *Ferrellgas, Inc. v. Yeiser*, 247 P.3d 1022, 1027 (Colo. 2011) (citation omitted) (the tortfeasor's settlement of the insurer's subrogation interest was an effective settlement with the plaintiff of her interest in the amount of the insurance payments and the plaintiff no longer had any claim to that amount).

Stated another way: when the insurer and tortfeasor settle the insurer's subrogation claim, the tortfeasor is no longer obligated to pay the plaintiff any portion of the amount of the insurance payment. *Garbell*, 122 Cal. Rptr. 3d at 863-64.

Courts will generally address this issue by ordering an offset from any damages award the plaintiff receives. *See Pacific Sheet Metal*, 2012 WL 12845610, at *1 (citations omitted); *Ferrellgas*, 247 P.3d at 1027 (affirming the trial court's setoff of the amount of the insurance payments after the subrogation claim was settled between the insurer and tortfeasor); *Garbell*, 122 Cal. Rptr. 3d at 863-64.

The settlement of the subrogation claim between Scottsdale and AmeriGas therefore extinguished Delta Saloon's right to seek the $2.2 million it was paid by Scottsdale as damages from AmeriGas. Delta Saloon argues that this result should be avoided as a result of several equitable principles, which the court will now discuss.

**2. Collateral Source Rule**

Delta Saloon argues that AmeriGas' requested ruling violates the collateral source rule. Delta Saloon contends the collateral source rule prevents its damages from being offset by monies it obtained from other sources, including the $2.2 million insurance payments. Delta Saloon acknowledges, however, that the collateral source rule does not prevent its damages from being offset by AmeriGas' payment—the settlement payment to Scottsdale. Delta Saloon maintains the damages should only be offset by the amount of the settlement, and not the amount of the insurance payment from Scottsdale.

AmeriGas, on the other hand, argues that the collateral source rule does not apply to subrogated claims.

18

"The collateral source rule provides 'that if an injured party received some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor.'" *Proctor v. Castelletti*, 112 Nev. 88, 90, n. 1, 911 P.2d 853, 854, n. 1 (1996) (quoting *Hrnjak v. Grayman, Inc.*, 94 Cal.Rptr. 623, 626, (1971)). Nevada has a *per se* rule that bars the admission of a collateral source of payment for any purpose. *Proctor*, 112 Nev. at 90, 911 P.2d at 854. The rationale behind this rule is that "[c]ollateral source evidence inevitably prejudices the jury because it greatly increases the likelihood that a jury will reduce a plaintiff's award of damages because it knows the plaintiff is already receiving compensation." *Id.* "Although the rule appears to allow a double recovery, … typically, the collateral source will have a lien or subrogation right that prevents such a double recovery." *Wills v. Foster*, 892 N.E.2d 1018, 1022 (Ill. 2008).

As such, "[w]hen an insurance carrier becomes subrogated to the claim of an insured against a third party tortfeasor, the payment of the insurance proceeds is no longer a 'collateral source' subject to the collateral source rule." J. Plitt, *supra*, § 223:111; *Paulson v. Allstate Ins. Co.*, 665 N.W.2d 744, 752 (Wis. 2003) ("if subrogation exists, the collateral source rule is inapplicable").

In addition, when the tortfeasor pays to settle the insurer's subrogation claim, the payment is not from a collateral source; therefore, the collateral source rule does not apply to bar a setoff. *See Segovia v. Romero,* 8 N.E. 3d 581, 587 (Ill. App. Ct. 2014); *Pacific Sheet Metal,* 2012 WL 12845610, at *1-2; Garbell,* 122 Cal.Rptr. at 864 (the subrogation doctrine modifies the collateral source rule); *Ferrellgas*, 247 P.3d at 1027. This is because "[t]he collateral source doctrine is inapplicable to bar the setoff of payments that are in some way 'attributable' to the defendant." *Ferrellgas*, 247 P.3d at 1028 (citation omitted). "[T]he collateral source rule does

not require that a tortfeasor pay double for his or her wrong to both the injured party and to reimburse the collateral source." *Garbell*, 122 Cal.Rptr. at 864 (citation omitted); *Paulson*, 665 N.W.2d at 752.

The collateral source rule does not allow Delta Saloon to recover the $2.2 million it was already paid by Scottsdale as damages in this action. Nor does it bar a setoff from any damages Delta Saloon might recover at trial. It is premature to address the amount of such settlement, which, if applicable, can be decided in a post-verdict motion.

### 3. The Made-Whole Doctrine

Next, Delta Saloon argues that AmeriGas' motion should be denied as a result of the made-whole doctrine.

The made-whole doctrine "'is a general equitable principle of insurance law that' prevents an insurance company from enforcing its subrogation rights before the insured has been fully reimbursed for their losses." *Canfora v. Coast Hotels and Casinos, Inc.*, 121 Nev. 771, 777, 121 P.3d 599, 604 (2005) (quoting *Barnes v. Ind. Auto. Dealers of Cal.*, 64 F.3d 1389, 1394 (9th Cir. 1995)). The doctrine limits the insurer's subrogation rights "'where an insured has not received compensation for his total loss,' *i.e.*, has not been made whole." 121 Nev. at 778, 121 P.3d at 604 (quoting *Cagle v. Bruner*, 112 F.3d 1510, 1520-21 (11th Cir. 1997)). "Unless it is explicitly excluded, the make-whole doctrine operates as a default rule that is read into insurance contracts." *Id*.

Delta Saloon argues that by settling with AmeriGas ahead of Delta Saloon, *Scottsdale* put its interests in front of Delta Saloon's, in violation of the duty of good faith and fair dealing inherent in all insurance contracts. That argument is inapposite because *Scottsdale* is no longer a party to this action after its subrogation claim was dismissed with prejudice.

Delta Saloon also contends that if AmeriGas "acquired" Scottsdale's subrogation rights, then the settlement between them is simply an end run around the made-whole doctrine. This argument also fails. There is nothing in the record to reflect that AmeriGas purchased Scottsdale's position or that there was any assignment of Scottsdale's subrogation rights. Scottsdale intervened in this action as subrogee pursuant to the terms of the insurance agreement to recover the $2.2 million it paid out to its insured. It then negotiated a settlement of its subrogation claim against AmeriGas, thereby extinguishing its subrogation claim. AmeriGas did not purchase and was not assigned Scottsdale's subrogation interest.

Nevada has not squarely addressed the issue, but other courts have held that the made-whole doctrine does not apply unless it is clear that the plaintiff will not be fully compensated by the combination of insurance proceeds and recovery from the tortfeasor. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) (in the absence of direct California authority, the Ninth Circuit held that the made-whole rule did not apply where the insured had not yet sought to recover from the tortfeasor and the insurer was seeking subrogation directly from the tortfeasor where there was no indication that the insured would not be made whole in suing the tortfeasor); *In re Sept. 11 Litigation*, 328 F.Supp.3d 178, 185 (S.D.N.Y. 2018) (citations omitted) (the made-whole rule applies when "the sources of recovery ultimately available are inadequate to fully compensate the insured for its losses"); *Paulson* 665 N.W.2d at 749-50, n. 3 (citations omitted) (the rule applies where there is "the prospect of an insurer competing with its own insured for funds which are insufficient to make the insured whole" but "if there is no doubt that the 'pie' is big enough," the made-whole issue does not arise); *Julson v. Federated Mut. Ins. Co.*, 562 N.W.2d 117, 120-21 (S.D. 1997) (made-whole rule did not apply where there was no showing that "the pool of funds awarded from the third-party tortfeasors was

… inadequate to make all parties whole"); *Winkelmann v. Excelsior Ins. Co.*, 650 N.E.2d 841, 844-45 (N.Y. 1995) (holding insurer who paid insured policy limits, but less than the insured's loss, can proceed against the tortfeasor responsible for the loss before the insured has been made whole where there was no evidence the tortfeasor's assets were insufficient to satisfy any additional liability to the plaintiffs).

As *Winkelmann* explained it, the made-whole rule "is based upon the nature of the relationship between the insurer and the insured—if the loss of one of the two must go unsatisfied, it should be the insurer who has been paid to assume the risk of loss[.]" *Winkelmann*, 650 N.E.2d at 845 (citations omitted). "Under the 'made-whole' rule, if the sources of recovery ultimately available to an insured party *are inadequate to fully compensate the insured for its losses*, then the *insurer*, who has been paid by the insured to assume the risk of loss, has no right to share in the proceeds of the insured's recovery from the tortfeasor." J. Plitt, *supra*, § 223:133, n. 1 (emphasis added). Here, Scottsdale did not go after Delta Saloon (its insured) for the subrogation amount. It settled with the alleged tortfeasor, AmeriGas. There is no indication that AmeriGas will be unable to fully compensate Delta Saloon for the remainder of its loss if AmeriGas is ultimately found negligent.

Delta Saloon also poses a series of hypotheticals regarding the impact of the made-whole doctrine if the jury finds that Delta Saloon was comparatively negligent. Delta Saloon asks that the court not limit its damages so it can first be determined if it is made-whole. Again, this argument is premature because the jury must first address whether AmeriGas was negligent, and if so, whether Delta Saloon was comparatively negligent, and if the answer to that question is yes, the jury must apportion the negligence among the parties. At that point, post-verdict, the parties may address the issue of any setoff.

1    In sum, the court finds the authority cited above to be persuasive, and the court concludes

2  the made-whole doctrine does not impact the court's determination that Delta Saloon is not

3  entitled to recover the $2.2 million in insurance payments from Scottsdale.

4    **4. The Common Fund Doctrine**

5    Finally, Delta Saloon argues that the common fund doctrine entitles it to have AmeriGas

6  charged with a proportionate amount of the fees and costs that Delta Saloon has incurred and will

7  continue to incur, and so any setoff should be reduced by this amount.

8    Delta Saloon reasons that if *Scottsdale* had stood on the sidelines while Delta Saloon

9  alone litigated this action against AmeriGas and then sought subrogation reimbursement from the

10  damage award, the common fund doctrine would require the court to charge *Scottsdale* with a

11  pro rata share of Delta Saloon's fees and costs, which would reduce the net amount of the

12  reimbursement. Delta Saloon argues that because AmeriGas is Scottsdale's *assignee*, it is in the

13  same position and should be subject to the common fund doctrine.

14    "Under the common fund doctrine, 'a litigant or a lawyer who recovers a common fund

15  for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee

16  from the fund as a whole.'" *In re Bard IVC Filters Product Liability Litigation*, 81 F.4th 897,

17  904, n. 8 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "It is intended to avoid

18  the unjust enrichment that would result from allowing parties to 'obtain the benefit of a lawsuit

19  without contributing to its cost.'" *Id.*

20    Some courts have held that it applies as a "limitation on an *insurance company's ability*

21  *to recover funds from its insured* where the insured obtains a judgment or settlement from the

22  third party tortfeasor." *Progressive West Ins. Co. v. Sup. Ct.*, 37 Cal.Rptr. 434, 444 (Cal. Ct.

23  App. 2005) (emphasis added). "Under this rule, an insurance company that does not participate

1   in the underlying action must pay a pro rata share of the insured's attorney fees and costs when it

2   seeks reimbursement from its insured out of funds obtained by the insured from the responsible

3   party." *Id*. (citation omitted).

4       Delta Saloon argues that the common fund should be applied to AmeriGas. In so arguing,

5   it relies on an unpublished case from a California appellate court where the insurer assigned its

6   subrogation rights. *See De Anza Interiors v. Hsu,* No. H035794, 2011 WL 6402146 (Cal. Ct.

7   App. 2011). In addition to the case being unpublished and not persuasive authority, Delta

8   Saloon's reliance on this case is again based on the mistaken assumption that AmeriGas was

9   assigned Scottsdale's subrogation rights. That simply did not occur. The court finds no basis for

10  applying the common fund doctrine to reduce any setoff to future damages Delta Saloon may

11  recover. Nor does the common fund doctrine impact the court's determination that Delta Saloon

12  is not required to recover the $2.2 million it was already paid by Scottsdale as damages in this

13  action.

14      **5. Conclusion as to the $2.2 Million in Damages**

15      Ultimately, the court finds that Delta Saloon is not entitled to recover the $2.2 million it

16  was already paid by Scottsdale as damages in this action. Therefore, AmeriGas' motion for

17  partial summary judgment is granted on this issue.

18      Whether *evidence* of the insurance payments or any potential setoff may come in at trial

19  is a separate issue. At this juncture, this matter will proceed to trial and Delta Saloon will be

20  allowed to present evidence to the jury to prove its damages from the explosion via the

21  appropriate legal method.

22      The question of the amount of Delta Saloon's damages will be submitted to the jury

23  along with the question of whether AmeriGas was negligent. The jury will also have to

determine whether Delta Saloon was comparatively negligent, either under ordinary negligence or because its violation of the Storey County Ordinances was the proximate cause of the explosion. If the jury concludes Delta Saloon was comparatively negligent, it will have to apportion the negligence between the parties. At that point, if necessary, the parties may file post-verdict motions concerning any setoff (including the amount).

## IV. CONCLUSION

AmeriGas' motion for partial summary judgment (ECF No. 131) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) The motion is **GRANTED** insofar as the court finds that AmeriGas has established the duty and breach elements of its affirmative defense of comparative negligence *per se* as a matter of law; however, the motion is **DENIED** insofar as to the causation element of the affirmative defense of comparative negligence *per se*. The parties will proceed to trial with respect to the element of causation of the affirmative defense of comparative negligence *per se*.

(2) The motion is **GRANTED** insofar as Delta Saloon may not recover the $2.2 million it was already paid by its insurer, Scottsdale, as part of its damages in this action.

The parties have **30 days** from the date of this Order to file their Joint Pretrial Order.

**IT IS SO ORDERED**.

Dated: March 28, 2024

_____
Craig S. Denney
United States Magistrate Judge